UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARETE WEALTH, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:24-cv-02191 |
| | ) | |
| JACK R. THACKER, | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF ARETE WEALTH, INC.'S OPPOSITION TO
DEFENDANT JACK THACKER'S MOTION TO DISMISS**

Plaintiff Arete Wealth, Inc. ("Arete"), by and through its attorneys, submits this opposition to Defendant Jack Thacker's motion to dismiss Arete's amended complaint.

## INTRODUCTION

Thacker's motion to dismiss should be denied because Arete's amended complaint plainly states a claim for fraudulent inducement and, in the alternative, breach of contract and indemnity. As detailed in the amended complaint, Thacker knew that his company Center Street Holdings, Inc. ("CS Holdings") was a ticking time bomb because its subsidiary, Center Street Securities, Inc. ("CS Securities"), had a long history of improper and unlawful business practices that exposed CS Holdings to significant liability. But to induce Arete to purchase CS Holdings, Thacker misrepresented that CS Holdings had no "Liabilities" in the parties' Stock Purchase Agreement ("SPA"), a term that was broadly defined to include "*any liability* . . . whether *known or unknown*, whether *asserted or unasserted*, [and] whether *accrued or unaccrued*." Doc. 17, Ex. A, p. 8 (emphases added). Arete relied on those representations, which were false at the time they were made by Thacker, in executing the SPA, but which were unknown to Arete until the subsequent flood of litigation arose from CS Securities' unscrupulous practices.

Despite those clear allegations of fraud, Thacker raises a variety of meritless arguments that misconstrue both the amended complaint and Illinois law. First, he asserts that the amended complaint merely alleges a breach of the SPA's contractual representations, ignoring both Arete's many allegations that his contractual representation was a false statement of fact and Illinois precedent holding that similar allegations support a claim for fraudulent inducement. Second, Thacker makes an undeveloped, waived argument that Arete's fraud claims are barred by Illinois's economic loss rule that does not merit consideration and, in any event, is flatly refuted by Illinois law. Third, Thacker incorrectly argues that Arete's claims are time-barred under the SPA's two-year limitations period for claims arising out of Thacker's representation that CS Holdings had no pending "Legacy Arbitrations." This argument fails because CS Securities' unlawful and improper business practices were not pending arbitration proceedings—they were improper acts that would later expose Arete to legal, regulatory, and other liability. As such, they clearly fit within the SPA's broad definition of Liabilities, which are subject to a six-year limitations period that has not expired. And even if Thacker was correct that he misrepresented the existence of Legacy Arbitrations, not Liabilities, the SPA's limitations period for indemnity claims is inapplicable to Arete's fraud claims. Finally, Thacker contends that Arete failed to sufficiently plead fraud, ignoring its detailed factual allegations that support each element of fraudulent inducement under Illinois law and satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). Accordingly, this Court should deny Thacker's motion to dismiss.

**ARGUMENT**

**I.     The amended complaint alleges fraud, not merely breach of contract.**

Thacker first argues that Arete's fraudulent inducement claim should be dismissed because it merely alleges that he "promised something and then failed to do it." Doc. 28 at 7 (quoting *Avery*

*v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169 (2005)). According to Thacker, such allegations only state a breach of contract claim. *Id.* Without additional allegations to "bring [Arete's] claim outside the ambit of the SPA," Thacker reasons, Arete is limited to its alternative claims for breach of contract and indemnity. *Id.*

Thacker's argument fails because Arete did not merely allege that he promised to perform under the SPA, then failed to do so. Indeed, his representation that CS Holdings and CS Securities "have no Liabilities" was not even a promise to perform—it was a false statement of fact. See *Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*, No. 17 C 6285, 2019 WL 3037075, at *5 (N.D. Ill. July 11, 2019) (contractual representations regarding defendant's experience and technological capacity were "allegedly false statements," not "promises to perform obligations under the contract," so plaintiff could "pursue a fraud claim based on those statements"). And throughout the amended complaint, Arete alleges that Thacker affirmatively misrepresented CS Holdings' lack of any "Liabilities" in the SPA, which induced Arete to execute the SPA. *See, e.g.,* Doc. 17, ¶¶ 2, 7-9, 22, 51-60, 69-72. Courts have repeatedly recognized that, under Illinois law, fraud claims may be premised on such false contractual representations or warranties. *See, e.g.*, *Dyson*, 2019 WL 3037075, at *5 (rejecting argument that false representation and warranty in parties' contract merely was breach of contractual representation); *BP Amoco Chem. v. Flint Hills Resources, LLC*, 489 F. Supp. 2d 853, 859 (N.D. Ill. 2007) (allegation that defendant falsely represented that chemical plant was "in good repair and complying with environmental regulations" in parties' contract sufficiently alleged fraud); *Kingsford Fastener, Inc. v. Koki*, No. 00 C 7395, 2002 WL 992610, at *3 (N.D. Ill. May 15, 2002) (false contractual representation that defendant's "nails were compatible with its nail guns" supported fraud claim); *Kleczek v. Jorgensen*, 328 Ill. App. 3d

3

1012, 1020-21 (4th Dist. 2002) (fraud claim could be premised on misleading contractual representation that no governmental authority had issued code violation to property's seller).

Thacker's reliance on *Avery* and *Greenberger v. GEICO Gen Ins. Co.*, 631 F.3d 392 (7th Cir. 2011), is misplaced, as neither case involved allegations, like Arete's, that the defendant made misrepresentations of present fact. Instead, they involved fraud claims grounded in defendants' promises regarding their *future performance*. See *Greenberger*, 631 F.3d at 399 (plaintiff alleged that defendant induced it to enter into insurance policy by "falsely promising to restore its insureds' vehicles to their preloss condition"); *Avery*, 216 Ill. 2d at 170 ("[P]laintiffs' consumer fraud claim may not be based on the assertion that State Farm breached its promise to restore plaintiffs' vehicles to their pre-loss condition or that State Farm breached its promise to repair plaintiffs' vehicles using parts of like kind and quality.") (cleaned up). As the court in *Dyson* correctly held, *Avery* and *Greenberger* do not apply to claims, like Arete's, where plaintiff alleges that the defendant's contractual representations were false statements of fact, not a mere breach of a promise to perform. See *Dyson*, 2019 WL 3037075, at *5 (distinguishing *Avery* and *Greenberger*).

Finally, Thacker argues that the only losses Arete pleads are those arising from the alleged breach of the SPA, *i.e.*, its costs "related to defending and resolving the pending arbitrations." Doc. 28 at 8 (quoting Doc. 17, ¶ 66). But he ignores Arete's numerous other allegations of damages beyond those costs, including paying $5 million to purchase CS Holdings in the first instance, the losing CS Securities' value, and suffering reputational harm because of the exposure of Thacker's unscrupulous practices. Doc. 17, ¶¶ 7, 9, 59, 65-67. In short, Thacker's argument that Arete has merely alleged a breach of the SPA ignores both Illinois law and Arete's well-pleaded allegations.

## II. Thacker's economic loss doctrine claim is waived and, nonetheless, meritless.

In a two-sentence footnote, Thacker also argues that "Illinois's economic loss doctrine" precludes Arete from pursuing any "tort claim" related to the contract. Doc. 28 at 8, n.11. But, as courts have consistently held, "arguments raised in passing in a footnote are waived." *U.S. Dep't of the Navy v. Fed. Labor Relations Auth.*, 975 F.2d 348, 352 n.1 (7th Cir. 1992); see also *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 642 (N.D. Ill. 2022) ("[F]inding undeveloped arguments made in footnotes to be waived is well-established."). Thus, this Court should disregard Thacker's perfunctory argument regarding the economic loss doctrine.

Waiver aside, Thacker is wrong. Illinois law recognizes an exception to the economic loss doctrine "where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud." *In re Chi. Flood Litig.*, 176 Ill. 2d 179, 199 (1997). Notably, neither of the cases Thacker cites involved fraud claims. See *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 817 (7th Cir. 2018) (claims arising out of data breach were barred by economic loss rule because they did not "identify specifically an actionable fraudulent statement under Illinois law"); *Wexler v. Chubb Nat'l Ins. Co.*, No. 21 CV 2543, 2022 WL 279571, at *6 (N.D. Ill. Jan. 31, 2022) (negligence claims were barred by economic loss rule and plaintiffs did not argue that fraud exception applied). This argument, therefore, also fails on the merits.

## III. Arete's claims are not barred by the contractual limitations period.

In a further effort to avoid culpability for his actions, Thacker argues that Arete's claims are barred by the contractual limitations period because any misrepresentations he made concerned Legacy Arbitrations, not Liabilities. Doc. 28 at 1, 3. This argument fails for two separate reasons: (1) CS Securities' non-compliant sales practices under Thacker's ownership and management squarely meet the definition of "Liabilities" in the SPA, so claims arising out of that

5

misrepresentation are not barred by the two-year contractual limitations period related to Thacker's representation concerning Legacy Arbitrations; and (2) even assuming that Thacker's misrepresentations concern Legacy Arbitrations, the two-year contractual limitations period solely applies to *indemnity* claims, not Arete's fraudulent inducement claim.

### A. Thacker misrepresented CS Holdings' "Liabilities."

Under the SPA, those representations labeled "Fundamental Representations," including Thacker's representation concerning CS Holdings' lack of Liabilities, survive the closing "for a period of six . . . years" from the date of closing in 2020. Doc. 17, ¶ 1 & Ex. A, § 8.03(a); *see also id.* p. 6 (defining "Fundamental Representations" to include representation concerning Liabilities). By contrast, other representations "and the[ir] related indemnities," including Thacker's representation as to CS Holdings' "Legacy Arbitrations" survived for two years after the closing. *Id.*, Ex. A, §§ 3.13, 8.03(a). Thacker attempts to invoke this shorter, two-year limitations period, arguing that he merely misrepresented the existence of Legacy Arbitrations, not Liabilities. But CS Securities' pattern of reckless and unlawful practices—of which Thacker was fully aware— clearly falls under the SPA's broad, catchall definition of "Liabilities."

"Under Illinois law, the goal of contract interpretation is to ascertain the parties' intent and, in doing so, we first look to the plain and ordinary meaning of the contract language." *Beach Forwarders, Inc. v. Serv. By Air, Inc.*, 76 F.4th 610, 613 (7th Cir. 2023) (cleaned up). Moreover, the Court should not "look at any one contract provision in isolation; instead, [it should] read the document as a whole." *Reger Devel. LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

Read as a whole, the SPA's plain text shows that Thacker's representation that CS Holdings and its subsidiaries "have no Liabilities" was a material misrepresentation given his knowledge of

6

CS Securities' entrenched pattern of unscrupulous practices. Doc. 17 at 47. The SPA defines "Liabilities" as follows:

> "**Liabilities**" (or "**Liability**") means *any liability*, commitment or obligation (whether *known or unknown*, whether *asserted or unasserted*, whether absolute or contingent, whether *accrued or unaccrued*, whether liquidated or unliquidated, and whether due or become due).

Doc. 17, Ex. A, p. 8 (italics added).

By broadly defining "Liabilities" to include *"*any liability, commitment or obligation," the parties clearly intended this term to include anything that could give rise to a legal obligation or accountability. See, *e.g.*, *Liability*, Black's Law Dictionary (12th ed. 2024) ("The quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment . . . ."). And by including "unasserted" and "unaccrued" liabilities, the parties intended "Liabilities" to cover conduct or conditions that could give rise to future legal accountability. Here, CS Securities' ongoing, improper business practices—which Thacker knew was a ticking time bomb—fit squarely within the SPA's definition of Liabilities.

Thacker argues that his misrepresentations regarding CS Securities' culture of non-compliant business practices should instead be cabined within his representation concerning Legacy Arbitrations. But this is contrary to Arete's allegations and belied by the SPA's text, which narrowly defined "Legacy Arbitrations" as "all FINRA or other arbitrations, or ancillary Actions relating thereto (including all related counterclaims, cross claims, appeals and other similar Actions)." Doc. 17, Ex. A, p. 8.[1] CS Securities' underlying improper business practices, which

---

[1] The SPA defines "Actions" as "any claim, action, cause of action, demand, lawsuit, arbitration (including before FINRA), inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of any nature, civil, criminal, administrative, regulatory or otherwise, whether at law or in equity." Doc. 17, Ex. A, p. 1.

7

were not themselves legal claims or proceedings, are therefore more appropriately construed as Liabilities under the SPA, as Arete has alleged.

Thacker's additional contention that the definition of Legacy Arbitrations is more specific than the definition of Liabilities, such that the more specific provision should control, is similarly misplaced. Here, the definition of Legacy Arbitrations does not encompass the Liabilities that Arete alleges were misrepresented (*i.e.* the underlying improper business practices of CS Securities that Thacker was aware of when he sold CS Holdings). Accordingly, there is no conflict between the two provisions in this instance and the principle that the more specific provision governs does not apply. See *Bank of Commerce v. Hoffman*, 829 F.3d 542, 548 (7th Cir. 2016).

### B. Even if Thacker's interpretation of the SPA was correct, any contractual limitations period would not apply to his fraudulent misrepresentations.

Even if Thacker is correct that his misrepresentations regarding CS Securities' pattern of unlawful and improper compliance and sales practices should instead be considered part of his Legacy Arbitration representations, he is wrong that Arete's claims would be "barred by a [two-year] contractual limitations period." Doc. 28 at 1, 3. Contractual limitations periods like the one in the SPA are limited to indemnity claims, not fraud claims like Arete's. See *Levine v. Bally Total Fitness Holding Corp.*, No. 06 C 1437, 2006 WL 8460936, at *7 (N.D. Ill. Sept. 29, 2006) (holding that substantively identical provision "refers to a period during which claims for indemnification must be asserted, but not other types of claims," including "common-law fraud"). Indeed, more broadly, courts have consistently held that contractual limitations provisions do not apply to claims of fraudulent inducement. *See*, *e.g.*, *id.* (limitation on indemnity claims did not apply to "common-law and statutory fraud"); *Faust Printing, Inc. v. MAN Capital Corp.*, No. 02 C 9345, 2006 WL 1719532, at *4 (N.D. Ill. June 16, 2006) (under Illinois law, claim that defendant "made . . . representations to induce [plaintiff] to purchase [a product] when [defendant] knew the

8

representations were false" was not subject to contractual limitations period); *Spartech Corp. v. Apelco, Inc.*, No. 85 C 10391, 1986 WL 10365, at *2 & n.2 (N.D. Ill. Sept. 17, 1986) (under Illinois law, provision stating that "representations and warranties of the Sellers . . . survive for a period of 36 months and not longer" did not bar "an action alleging fraud in the inducement"). Accordingly, even accepting Thacker's meritless position, Arete's claim for fraudulent inducement is unaffected by the SPA's two-year limitation period concerning Legacy Arbitration representations.

**IV. The amended complaint states a fraudulent inducement claim under Illinois law.**

The amended complaint also sufficiently alleges each element of fraudulent inducement under Illinois law: " (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) (cleaned up).

Here, the amended complaint alleges that, before executing the SPA, Thacker knew that CS Securities' compliance and business practices were deficient and promoted sales of risky securities to unsuitable customers. See Doc. 17, ¶¶ 34-37, 39-42, 44-51. Yet he represented that CS Securities had no "Liabilities," a term that, as explained above, encompasses these dubious practices. *Id.* ¶¶ 17-19 & Ex. A § 3.06(a). He did so intending that Arete would rely and pay him $5 million for CS Holdings, which Arete did. ¶¶ *Id.* 7, 9, 20, 22, 57-60, 70-72. As a result, Arete suffered significant damages in addition to that $5 million, including a material diminution in CS Holdings' value, significant expenses in defending against FINRA arbitrations, regulatory penalties, and reputational harm. *Id.* ¶¶ 4, 59, 65-67, 73. Thus, Arete sufficiently pled fraudulent inducement under Illinois law.

9

Yet Thacker confusingly argues that he could not have misrepresented a material fact because, "at the time the parties entered the SPA, the Liabilities upon which Arete bases all its claims *did not exist*." Doc. 27 at 11 (emphasis in original). Once again, Thacker is attempting to reframe the Liabilities that Arete has alleged were misrepresented (*i.e.*, CS Securities' improper business practices while Thacker owned and operated the company) with the subsequent Legacy Arbitrations arising out of that conduct. And the amended complaint makes clear that Thacker knew of these Liabilities *before* he executed the SPA. See Doc. 17, ¶¶ 34-37, 39-42, 44-51. These allegations must be taken as true for purposes of Thacker's motion. See *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018).

Relatedly, Thacker incorrectly argues that Arete "explicitly acknowledge[d] that the so-called Liabilities . . . did not exist when the parties entered the SPA," see Doc. 28 at 11, selectively quoting paragraph 59 of the amended complaint. What Arete actually alleged, however, is that Thacker knew of Liabilities that existed at the time of the SPA's execution—*i.e.*, CS Securities' improper and ongoing business practices—but Arete could not have "uncovered the breadth of Thacker's deception" because "positive market conditions concealed the true effects of CS Securities culture of non-compliance." Doc. 17, ¶ 59. Indeed, throughout the amended complaint, Arete alleged that Thacker knew that improper business practices were ongoing at the time of the SPA's execution. *Id.* ¶¶ 23-50.

Next, Thacker argues that he did not misrepresent the existence of any Liabilities because, under a FINRA guidance interpreting SEC regulations, lawsuits against broker/dealers "should be accounted as contingent liabilities booked against net capital when: (1) a suit has been initiated; and (2) occurrence of a loss is probable and the amount can be reasonably estimated." Doc. 28 at 11. Although unclear, Thacker's attempt to engraft this guidance into the SPA is belied by its text,

10

which defines Liabilities to include liability that is "unasserted" and/or "unaccrued" and without any reference to this guidance. Doc. 17, Ex. A, p. 8. The parties would have referred to this guidance if they intended to incorporate it, as they did in other definitions. See *id.* at 7 (defining "FINRA Application" as "an application pursuant to FINRA Rule 1017"); *id.* at 11 (defining "Self-Regulatory Organization" by reference to "Section 3(a)(26) of the Securities Exchange Act" and "CFTC Rule 1.3"); *see also Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 782 F.3d 353, 364 n.7 (7th Cir. 2015) ("[I]t is evident that the parties knew how to incorporate evidentiary presumptions into the Bill of Lading. The failure to do so explicitly in Clause 10(2) demonstrates that the parties did not wish to create such a presumption.").

Finally, Thacker contends that he should not be held liable for his intentional fraud because Arete should have done more to uncover it, noting that the amended complaint does not allege "that Arete was precluded from inquiring about the company's compliance program or its customers during pre-sale due diligence." Doc. 28 at 13-14. This argument fails because, "[u]nder Illinois law, justifiable reliance exists when it was reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (cleaned up). That is precisely the case here, as the SPA states that "each party has the right to fully rely upon the representations, warranties, covenant and agreements of each other party," even if they had the ability "to fully investigate [each other's] affairs." Doc. 17, ¶ 20 & Ex. A, § 8.03(f); see *Escue v. Sequent, Inc.*, No. 2:09-cv-765, 2010 WL 3365933, at *7 (S.D. Ohio Aug. 24, 2010) (citing similar provision in concluding that plaintiff stated a claim of fraud). Furthermore, Thacker knew far more about the deficiencies in CS Securities' compliance policies than Arete, he falsely represented to regulators that CS Securities maintained an adequate compliance system, and positive market conditions further masked the

11

issues with the products CS Securities had sold to inappropriate customers. Doc. 17, ¶¶ 12, 23-60. In these circumstances, no further investigation was required. *See West v. W. Cas. & Sur. Co.*, 846 F.2d 387, 394 (7th Cir. 1988) ("A plaintiff's duty to investigate further is absolved . . . when the defendant's deliberate misrepresentations have lulled the plaintiff into a false sense of security, or when his assurances were intended to block further inquiry.").[2]

### VI. The amended complaint satisfies Rule 9(b).

Finally, contrary to Thacker's assertion, Arete has alleged its fraud claim with adequate particularity. Rule 9(b) requires that a fraud claim set forth "the circumstances constituting fraud . . . with particularity." In other words, a plaintiff ordinarily must describe "the who, what, when, where, and how of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (cleaned up). "Rule 9(b) requires specificity, but it does not insist that a plaintiff literally prove his case in the complaint." *U.S. ex rel. Prose v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 741 (7th Cir. 2021). Indeed, the Seventh Circuit has "warned that courts and litigants often erroneously take an overly rigid view of" Rule 9(b). *U.S. ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (cleaned up).

Arete's allegations satisfy Rule 9(b). The amended complaint specifies that Thacker represented a lack of Liabilities to Arete (the "who"). See Doc. 17, ¶¶ 19-20. It described in detail the Liabilities that Thacker knowingly misrepresented as non-existent (the "what"): CS Securities' improper business practices, including fraudulent or improper sales of debentures and other investments to unsuitable customers, allowing automatic renewals of certain debentures even after

---

[2] Thacker also argues that he had no duty to disclose CS Securities' bad practices, *see* Doc. 28 at 11-13, but Arete's fraudulent inducement claim is grounded in his affirmative misrepresentation, not a failure to disclose material facts. Accordingly, this argument can be rejected out of hand.

learning of the underlying improper original sales, lack of maintenance of unmonitored "House" accounts, improper sales of real estate investment trust products, and failure to make required disclosures when investments had been flagged. *Id.* ¶¶ 26-50. And the amended complaint specified that Thacker's misrepresentations were made in the SPA that was executed in December 2020 (the "when" and "where"). *Id.* ¶ 16. Thus, Arete's allegations of fraud more than enough to satisfy Rule 9(b).

For his part, Thacker does not take issue with the specificity of Arete's allegations regarding the misrepresentation he made to Arete. Instead, he contends that Arete failed to satisfy Rule 9(b) by not alleging all "facts relating to [CS Securities'] sales of . . . products" to unqualified customers, such as "when these products were sold, the customers who purchased them, why they were inappropriate investment products, how their sale violated Center Street's compliance rules, or how the company ultimately incurred Losses as a result." Doc. 28 at 15. This argument misses the mark because Rule 9(b) requires the "circumstances *constituting fraud*" to be alleged with particularity. Fed. R. Civ. P. 9(b) (emphasis added); see also *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993) (Rule 9(b) requires plaintiff to "set forth the date and content of the statements or omissions that *it claimed to be fraudulent*") (emphasis added). Here, Arete is not claiming that it was defrauded by CS Securities in the sale of a debenture or other investment product. Rather, Arete alleges that Thacker defrauded it by affirmatively misrepresenting that CS Holdings had no Liabilities, when, in fact, CS Securities' pattern of improper practices was a significant Liability under the SPA. Thus, adding additional detail regarding CS Securities' underlying improper sales is unnecessary under Rule 9(b).

In any event, Arete included sufficient detail regarding those underlying practices and transactions. For example, Arete identified two representative customers by name. Doc. 17, ¶¶ 36,

13

46. Arete also alleged that CS Securities representatives made sales to "seniors," "elderly retail investors," individuals with "conservative investment goals," and other "non-accredited investors" without subjecting them to heightened review. *Id.* ¶¶ 25, 30. Arete also detailed the various practices, products, and transactions that it later discovered to be problematic, including sales of debenture bonds to unsuitable customers by CS Securities representative David Escarcega, CS Securities' noncompliance with Regulation Best Interest, its maintenance (or lack thereof) of unmonitored "House" accounts, and its improper sales of troubled investments in real estate investment trusts to unsuitable customers. *Id.* ¶¶ 26-50. Contrary to Thacker's suggestion, Rule 9(b) does not require Arete to list the names of every person who purchased one of these products and lay out the minutiae of every purchase. *See Midwest Commerce*, 4 F.3d at 523 ("Rule 9(b) does not require that the complaint explain the plaintiff's theory of the case, but only that it state the misrepresentation, omission, or other action or inaction that the plaintiff claims was fraudulent."); *City of Chicago v. Smollett*, 421 F. Supp. 3d 565, 575 (N.D. Ill. 2019) (allegation that defendant made false statements to "unnamed 'CPD officers'" was sufficient to satisfy Rule 9(b) because he had "more than enough information to be on notice of the City's claims, respond to the City's allegations, and prepare an effective defense, even without the particular CPD officers' names").

**VII. Arete stated alternative claims of breach of contract and indemnity.**

Arete has also sufficiently pleaded its breach of contract and indemnity claims, which Thacker does not dispute can be brought in the alternative to Arete's fraudulent inducement claim. *See* Fed. R. Civ. P. 8(d); *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1371 (7th Cir. 1990).

With respect to these claims, Thacker's simply rehashes his argument that the breach of representation at issue concerns Legacy Arbitrations, not Liabilities. See Doc. 28 at 16-17. This argument fails for the same reasons articulated as to Arete's fraudulent inducement claim: Thacker's interpretation of the SPA is belied by the definition of "Legacy Arbitrations," which is narrowly defined as "all FINRA or other arbitrations, or ancillary Actions relating thereto (including all related counterclaims, cross claims, appeals and other similar Actions)." See *supra* pp. 6-8; see also Doc. 17, Ex. A, p. 8. CS Securities' underlying improper business practices—which are the liabilities Arete alleges were misrepresented by Thacker—are not themselves legal claims or proceedings and more squarely fit under the SPA's broad definition of Liabilities.

## CONCLUSION

For these reasons, Arete requests that this Court deny Thacker's motion to dismiss.

Respectfully submitted,

*/s/    Michael T. Layden*
*Attorney for Plaintiff Arete Wealth, Inc.*

Michael T. Layden (mlayden@crokefairchild.com)
Brian Prendergast (bprendergast@crokefairchild.com)
Carson Griffis (cgriffis@crokefairchild.com)
CROKE FAIRCHILD DUARTE & BERES, LLC
191 N. Wacker
Suite 3100
Chicago, IL 60601
Tel: (312) 641-0881

## CERTIFICATE OF SERVICE

Michael T. Layden, an attorney, certifies that he caused a copy of **Plaintiff Arete Wealth, Inc.'s Opposition to Defendant Jack Thacker's Motion to Dismiss** to be served upon all counsel of record via the Court's ECF system, on this **4th** day of **September, 2024**.

*/s/ Michael T. Layden*