AIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARETE WEALTH, INC.,

    Plaintiff,

v.

JACK R. THACKER,

    Defendant.

Case No. 24-CV-2191

**DEFENDANT JACK THACKER'S REPLY
IN SUPPORT OF HIS MOTION TO DISMISS**

## *Introduction*

The Amended Complaint must be dismissed because Arete's claims are predicated on the erroneous assertion that the SPA's definition of "Liabilities" incorporated "anything that could give rise to a legal obligation or accountability" in the future, even when no such "liability, commitment or obligation" existed at the time. Resp. 7.[1] Based on this flawed theory, Arete claims that Thacker's representation in the SPA that Center Street did not have undisclosed Liabilities was incorrect and fraudulent because customer investments, which were then profitable, should have been viewed as Liabilities. Neither the SPA nor any reasonable definition of liabilities would require a broker-dealer to classify profitable customer investments as a future liability owed to those customers. Moreover, to the extent that Center Street's sales practices would someday result in customer losses and claims for reimbursement, the SPA specifically accounted for such potential claims in its provisions governing "Legacy Arbitrations." Arete's efforts to recast those Legacy Arbitration claims as Liabilities defies basic maxims of contract interpretation. The Amended Complaint also fails to identify facts (let alone detailed facts) that would show that the SPA's disclosure was inaccurate, let alone knowingly false. Arete's response also confirms that its fraudulent inducement claim is coextensive with its breach of contract allegation, thus precluding the claim under Illinois law. Finally, Arete's alternative breach of contract and indemnification claims fail for the reasons that undermine its fraud claim, and because those alternative counts are barred under the SPA's specific, limiting terms.

---

[1] Arete's Opposition to Thacker's Motion to Dismiss, Dkt. 33, is referenced as Arete's "response" and is cited as "Resp." Thacker's Memorandum in Support of His Motion to Dismiss, Dkt. 33, is referred to as Thacker's "motion" and cited as "Mot." Terms defined in Thacker's motion are incorporated herein. Capitalized terms refer to the definitions applied to those terms in the SPA. *See* Dkt. 17 "(Am. Compl."), Ex. A, Art. I. Thacker will, under separate cover, file a copy of the SPA that includes its relevant schedules.

## *Argument*

I.    **The Amended Complaint Fails To Allege Undisclosed "Liabilities."**

The allegations of Arete's Amended Complaint are, at best, ambiguous. In response to Thacker's motion, Arete was forced to articulate some of the specific theories and facts underlying its accusations. In its response, Arete acknowledges that its claims are predicated *solely* on an affirmative misrepresentation theory. Resp. 12, n.2. In particular, Arete claims it was induced to purchase Center Street based on a single misrepresentation in the parties' contract, SPA § 3.06(a), in which Thacker represented that Center Street had no additional undisclosed Liabilities. *Id.*[2] Arete's claims, however, are based on a fundamentally flawed interpretation of that contractual term that is belied by the contract as a whole, including its numerous schedules.

    A.    **Sales Practices Are Not "Liabilities."**

Arete claims that Center Street's allegedly "improper compliance and sales practices" "promoted sales of risky securities," and thus constituted SPA Liabilities. Resp. 7-9. It claims the failure to identify those supposed compliance shortfalls constituted fraud because Center Street's "improper business practices . . . fit squarely within the SPA's definition of Liabilities." Resp. 7. This assertion—which is Arete's core theory—is belied by the SPA and any reasonable understanding of the term.

In evaluating the Amended Complaint, it is important to put Arete's fraudulent inducement claim in context. This case is based on a complex transaction involving the sale of a SEC and FINRA registered broker-dealer. The parties are sophisticated entities that were represented by

---

[2] Arete thus concedes its claim is not based on any other SPA provisions or theories of liability (including fraudulent concealment) to which it alluded in the Amended Complaint. *See* Resp.12, n.2; *see Biggs v. Littlefuse, Inc.*, No. 103-cv-00225, 2006 WL 3626759, at *8 (N.D. Ill. Dec. 8, 2006) (allegations raised in pleading but waived in an opposition brief are "abandoned").

2

experienced counsel. They negotiated a lengthy (65-page, single-spaced) stock purchase agreement (the SPA) that was supported by 200 pages of supporting materials and schedules, including:

- *Schedule 3.05*: The unaudited and audited financial statements of Center Street and its subsidiaries from December 31, 2017 through November 30, 2020, including the reports of independent registered public accounting firms concerning the accuracy of the financial statements; and

- *Schedule 3.13(a)*: A schedule of Center Street's Legacy Arbitrations, including pending matters in which customers alleged "unsuitable investment recommendations" by Center Street employees.

Now, in a transparent effort to unwind the Center Street sale, Arete propounds a tortured interpretation of one of the SPA's defined terms to argue that Thacker should have identified purportedly non-compliant business practices as Balance Sheet Liabilities.

Section 3.06 of the SPA states that, "as of the date" of the contract, "[Center Street] ha[d] no Liabilities except (a) those which are adequately reflected or reserved against in the Balance Sheet…." SPA § 3.06(a). The contract, in turn, stated that Center Street's Financial Statements, including its Balance Sheet, were prepared in accordance with generally accepted accounting principles (GAAP). *See* SPA § 3.05. The SPA therefore indicated that the Liabilities reflected on its Balance Sheet were accounted for pursuant to GAAP's standards. GAAP defines a contingency to be "[a]n existing condition, situation, or set of circumstances involving uncertainty as to possible … loss (loss contingency) to an entity that will ultimately be resolved when one or more future events occur or fail to occur." US GAAP Accounting Standards Codification 450-20-20. Under the federal the financial reporting obligations of broker-dealers like Center Street, *see*, *e.g.*, SEC Rule 15c3-1 (the "Net Capital Rule"), contingent liabilities are not cognizable on the balance sheet of a broker-dealer until (1) a suit has been initiated; and (2) "occurrence of a loss is probable and the amount can be reasonably estimated." See SEC Rules 15c3-1I(2)/0110 (Lawsuits as Contingent

Liabilities) & 0110 (Guarantees and Contingencies).³ Consistent with all of these principles, the SPA defined Liabilities, which were reported on the Balance Sheet consistent with GAAP, to be "any liability, commitment or obligation (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due)." SPA, Art. I.

Arete claims Center Street permitted its employee financial advisors to engage in noncompliant customer sales practices. But even if true, those practices would not constitute SPA Liabilities. The purportedly improper sales alluded to in the Amended Complaint are not a "liability, commitment or obligation" (as the SPA defined Liabilities) or a liability under the GAAP accounting standards or SEC Rules that Center Street represented as governing its Balance Sheet calculations. As set forth above, a liability is generally understood to be an existing, calculable duty or obligation, not a hypothetical risk of suit that may never occur. *See* Mot. 10-11; Black's Law Dictionary – LIABILITY (11th ed. 2019) (defining liability as a "financial or pecuniary obligation in a specified amount"). An existing or expected obligation can be recorded on a balance sheet—as the SPA required—unlike unknown, theoretical risks of potential future losses and claims, which never would have been recorded on Center Sheet's Balance Sheet. Thus, while improper sales practices can *lead to* obligations, they themselves are not Liabilities, especially if they do not result in investor harm or claims for reimbursement.⁴ Stated differently, past sales practices that do not result in customer complaints or claims are not Liabilities.

The Amended Complaint does not allege Thacker was aware of undisclosed customer claims associated with noncompliant customer investments. To the contrary, as Arete

---

³ The SPA stated that Center Street had adhered to this Net Capital Rule. SPA § 3.15(g).

⁴ Tellingly, Arete does not explain how Thacker should have accounted for these allegedly substandard policies on Center Street's balance sheet.

4

acknowledges, when the parties executed the SPA, the allegedly "unsuitable" investments that now underlie it claims had increased in value. Am. Compl. ¶ 59 (citing "positive market conditions"); Resp. 10 (same). Arete nonetheless claims those profitable investments should have been classified as Liabilities due to the risk of market fluctuation. In its response, Arete characterizes the investors' then positive positions as a "ticking timebomb," Resp. 1, but the Amended Complaint fails to allege any facts to show that Thacker knew those investments would lose value and the "time bomb" would explode. *Cf. Bastian v. Petren Resources Corp.*, 892 F.2d 680, 685 (7th Cir. 1990) (Defendants are not insurers against market downturn); *Kowal v. MCI Communications Corp.*, 1992 WL 121378, at *7 (D.D.C. 1992) (dismissing claim "where essentially the only allegation is that defendants failed to foresee an economic downturn").

Arete nonetheless argues that the SPA required Thacker to identify "anything that *could give rise to* a legal obligation or accountability" as a Liability. Resp. 7 (emphasis added). That argument suffers from a myriad of fundamental flaws. First, neither GAAP or the SPA defines Liabilities to include the potential *causes* of future obligations; the SPA required the disclosure of *existing* liabilities, commitments and obligations. It is a logical fallacy to simply assume that something that *could* become liability *is* a liability, and there is nothing in the SPA's definitions or generally accepted accounting standards to support that understanding of the term. Second, Arete's argument ignores a crucial limitation to the SPA's definition—namely, that it only covered liabilities, commitments or obligations that existed "*as of the date*" of the parties' agreement, thereby explicitly excluding possible, future obligations. SPA, Art. III (emphasis added). Third, the SPA specifically contemplated such future, unknown claims by disgruntled investors in its definition of Legacy Arbitrations.

In its Response, Arete argues that the SPA's reference to "unasserted" and "unaccrued" Liabilities encapsulated "conduct or conditions that could give rise to future legal accountability."

5

Resp. 7. It is an argument that misconstrues both terms. As set forth above, "unasserted" obligations must still be grounded in a present or expected obligation. *See supra* at 3-4. "Unaccrued" liabilities are debts or obligations that currently exist but are not yet due. Neither adjective encompasses commitments or obligations that do not (and may not) exist. Arete's efforts to redefine "unasserted" and "unaccrued" to mean merely "possible" should be rejected.

### B. The SPA Defined and Disclosed Existing and Threatened Claims Against Center Street As Legacy Arbitrations, Not Liabilities.

Arete's opposition acknowledges that the SPA's definition of Legacy Arbitrations contemplates claims that arise out of the same conduct that it claims constitute SPA Liabilities. *See* Resp. 10 (acknowledging Legacy Arbitrations "aris[e] out of" the same conduct). Still, Arete argues that Center Street's "improper compliance and sales practices" are properly characterized as Liabilities (and not Legacy Arbitrations) because those allegedly deficient compliance practices were "not themselves legal claims or proceedings." Resp. 7-8, 10. Put differently, Arete appears to argue that under the terms of the SPA, the conduct that could support future claims constituted "Liabilities" until asserted, when they transformed into Legacy Arbitrations. Resp. 10.

In support of this inaccurate reading of the SPA, Arete repeatedly misquotes the contract's definition of Legacy Arbitrations. The SPA defined Legacy Arbitrations to include all Actions "threatened, pending *or pursued at some future date (including after Closing),*" brought by any person in connection with products sold by Center Street before the closing. SPA Art. I (emphasis added).[5] Arete's response repeatedly excludes this portion of the Legacy Arbitrations definition.

---

[5] The Legacy Arbitrations definition reads, in its entirety:

> "**Legacy Arbitrations**" means all FINRA or other arbitrations, or any ancillary Actions relating thereto (including all related counterclaims, cross claims, appeals and other similar Actions), whether threatened, pending or pursued at some future date (including after Closing), brought by any Person in connection with, in whole or in part, such Person's purchase or ownership of any investment products sold by [Center Street] prior to the Closing Date, including those described in Section 3.13(a) of the Disclosure Schedules."

6

*See* Resp. 7 (claiming the SPA "narrowly defined 'Legacy Arbitrations' as 'all FINRA or other arbitrations, or ancillary Actions relating thereto (including all related counterclaims, cross claims, appeals and other similar Actions).'"). The reason for Arete's selective citation is clear: the full definition of Legacy Arbitrations includes claims "*pursued at some future date*," thereby encapsulating the same pre-suit risks that Arete wants the Court to read as Liabilities. SPA Art. I (emphasis added). Arete's claim that the allegedly "improper business practices" upon which subsequent legal actions (*i.e.*, Legacy Arbitrations) are based are somehow separate and distinct because they "were not themselves legal claims or proceedings," is thus patently incorrect.

As Arete acknowledges, Illinois law requires the Court to look "to the plain and ordinary meaning of the contract language," and to review all of the contract's provisions "as a whole." Resp. 6 (quoting *Reger Devel. LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010)); *see also Hicks v. City of Des Plaines*, 2015 WL 5084636, at *4 (Ill. App. Aug. 27, 2015). Doing so here requires the Court to account for the definitions of both Liabilities *and* Legacy Arbitrations. Moreover, the well-settled principles of contract interpretation require the Court to read specific provisions to govern general provisions on the same subject. *Medcom Holding Co. v. Baxter Travenol Labs, Inc.*, 984 F.2d 223, 227 (7th Cir. 1993). As noted above, Arete attempts to avoid this maxim by refusing to acknowledge the full definition of Legacy Arbitrations. Resp. 7.

Correctly identifying potential future investor claims as Legacy Arbitrations undermines Arete's fraudulent inducement claim in two separate ways. First, the parties contemplated and agreed to limit indemnification claims for post-close investor claims based on Center Street's pre-close sale of investment products. *See Sterling Nat'l Bank v. Block*, 984 F.3d 1210, 1217 (7th Cir. 2021) (contracts negotiated between commercially sophisticated parties should be interpreted as written "because such parties know how to say what they mean") (internal quotation omitted).

Second, and more fundamentally, Thacker specifically identified and disclosed the risk of future investor claims in the SPA. In SPA § 3.13, Thacker represented that there were "no Actions pending, or, to Seller's Knowledge, threatened against or by the Seller . . . ." "*[o]ther than the Legacy Arbitrations.*" SPA § 3.13(b). The SPA's indemnity provisions similarly contemplated such claims, providing indemnification for such Losses.[6] Arete thus cannot claim that Thacker failed to identify this risk of consumer claims against Center Street in the parties' contract.

Finally, the SPA's disclosure of Legacy Arbitrations (SPA §3.13(a)) reflected the pending arbitration proceedings that had been alleged against Center Street, including customer complaints that alleged some form of improper compliance and/or sales practices. *See* SPA Schedule 3.13(a). Thus, the supposed infirmities that Arete complains Thacker failed to quantify were, in fact, disclosed as Legacy Arbitrations. That disclosure further undercuts Arete's fraud claim.

## II. Arete Has Failed To Allege The Elements of Fraudulent Inducement.

As set forth in Thacker's motion, Arete's fraudulent inducement claim fails at its first element—alleging a false statement. As the response makes clear, Arete's fraud claim is based solely on Thacker's representation in SPA § 3.06. Arete claims that representation was misleading because it did not account for the risk that a potential market downturn would adversely impact Center Street's allegedly unsuitable investment sales, resulting in customer actions brought against the company. Resp. 7 (arguing Liabilities includes "conduct or conditions that *could give rise to* future legal accountability") (emphasis added).[7] Arete, however, must allege a false statement of "present or preexisting fact." *Nikollbibaj v. U.S. Foods, Inc.*, 2022 WL 16836407, at *3 (N.D. Ill.

---

[6] SPA § 8.01(a)(iv) provides indemnification "from and against any and all Losses incurred" concerning "any Legacy Arbitration Losses and any Post-Closing Litigation Losses." *Id.*

[7] Despite the ambiguity in its pleading, Arete acknowledges in its response that its fraudulent inducement claim is not based on Thacker's representations regarding Center Street's compliance program. Resp. 6. The perfunctory statements in the Amended Complaint regarding that program are therefore irrelevant.

Nov. 9, 2022) (quoting *Ault v. C.C. Servs.*, 597 N.E.2d 720, 722 (Ill. App. Ct. 1992)). The unstated risks associated with alleged compliance failures do not meet that standard.

Arete's fraudulent inducement claim fails for the related, independent reason that the Amended Complaint does not allege facts that would show Thacker knew that market fluctuations would ultimately diminish the value of Center Street's allegedly unsuitable investments. As noted above, Arete's response refers to Center Street's allegedly noncompliant sales practices as a "ticking time bomb." Resp. 1, 7. While the Court is required (for purposes of this motion) to assume Thacker knew of the noncompliant sales practices, there is nothing in the Amended Complaint or Arete's response to suggest that Thacker could foresee market fluctuations that would cause customer investments to lose value. *See* Resp. 10 (stating "positive market conditions concealed the true effects of [Center Street's] culture of non-compliance."). Absent allegations that Thacker knew that Center Street's investment strategies would lose value, the Amended Complaint fails to plead scienter—*i.e.*, allegations that Thacker knew Section 3.06 was inaccurate.

Finally, the SPA's disclosures, including those related to existing and potential future customer suits, undermines any claim that Arete justifiably relied on the SPA § 3.06 to its detriment. The SPA advised Arete of existing customer claims (predicted on the suitability of investments), *see* SPA, Sch. 3.13(a), and accounted for potential, additional future suits, SPA §§ 3.13(a)-(b); 8.01(a)(iv). These disclosures undermine Arete's assertion that because of SPA § 3.06, Arete was unaware that customers could file suit against Center Street in the future.

### III. The Amended Complaint Fails To Meet Rule 9(b)'s Pleading Requirements.

Despite Arete's contrary argument, the Amended Complaint fails to allege the "who, what, when, where, and how" required to plead fraud. *Toulon*, 877 F.3d at 734 (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014)). Rule 9(b)'s heightened pleading serves multiple purposes: (1) to inform a defendant of the claims against him; (2) to eliminate the

9

filing of a conclusory complaint as a pretext for unwarranted discovery; and (3) to protect defendants from reputationally unfounded charges of fraud. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994); *Petrakopoulou v. DHR Int'l, Inc.*, 626 F. Supp. 2d 866, 870 (N.D. Ill. 2009). Where a fraud claim is predicated solely on certain underlying conduct, as it is here, Rule 9(b) requires the plaintiff to allege facts of that conduct. *Cf. Mucha v. Volkswagen Aktiengesellschaft*, 540 F. Supp. 3d 269, 291 (E.D.N.Y. 2021), *aff'd sub nom. Mucha v. Winterkorn*, No. 21-1511-CV, 2022 WL 774877 (2d Cir. Mar. 15, 2022) (where fraud is predicated on criminal conduct, that conduct must be pled with specificity).

Arete acknowledges that Rule 9(b) required it to allege the "circumstances constituting fraud" with particularity. Resp. 13. It nonetheless argues that it does not need to plead any facts that would suggest that the Section 3.06 representation was fraudulent. Resp. 6-7. Rather, focusing just on the SPA surface-level representation, Arete argues it met Rule 9(b)'s requirement. *Id.*[8]

Arete's fraud theory rests entirely on the alleged compliance failures and associated unsuitable product sales—the business practices which purportedly "gave rise" to the undisclosed Liabilities. In its response, Arete cites a third of its Amended Complaint as support for the conclusory assertion that it "described in detail the Liabilities that Thacker knowingly misrepresented as non-existent." Resp. 12 (citing Paragraphs 26 through 50). That conclusory assertion does not satisfy Rule 9(b)'s requirements. To allow Arete to file suit for fraudulent inducement without alleging any specific facts that would suggest that Thacker's disclosures were, in fact, false would allow Arete to bypass Rule 9(b) entirely. Detailed averments regarding the allegedly problematic Center Street investments are necessary to advise Thacker why his

---

[8] Arete explains that it was the "who;" Center Street's purported improper business practices were the "what;" and the December 2020 SPA constituted the "when" and the "where" of its story. Resp. 12-13.

10

representation was false, protect Thacker's reputation, and prevent unwarranted discovery.

Alternatively, Arete's claims it satisfied Rule 9(b) by identifying "two representative customers by name," and by alleging that Center Street sold unsuitable products to "seniors," "elderly retail investors," and individuals with "conservative investment goals." Resp. 13-14. These vague, summary allegations only further demonstrate the Amended Complaint's insufficiency. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (if plaintiffs cannot provide details of the fraudulent act, they "still must use some alternative means of injecting precision and some measure of substantiation into their allegations") (internal quotation omitted). Finally, Arete relies on its allegations regarding the improper conduct of David Escarcega, an employee fired and publicly disciplined more than 3½ years before the SPA was signed. Tellingly, Arete fails to connect Escarcega's improper conduct to the representations in the SPA, further highlighting the insufficiency of its pleading.[9]

## IV. Arete's Fraud Claim Is Coextensive With Its Breach Of Contract Claim.

Finally, Arete's fraud claim must be dismissed because it is a breach of contract claim repackaged in a transparent attempt to bypass the SPA's negotiated terms. Despite Arete's protestations, the general rule, which applies here, is that "fraud claims must contain something more than reformulated allegations of a contractual breach." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844, 216 Ill.2d 100 (Ill. 2005)); *Turner v. Orthopedic and Shoulder Center, S.C.*, 82 N.E.3d 801, 807 (Ill. App. Ct. 2017) (stating same). Indeed, Illinois courts routinely hold that a plaintiff alleging fraud must assert conduct "separate and distinct from the alleged breach of a contractual promise."

---

[9] If anything, the termination and public disciplinary action brought against Escarcega undermine the claim that Thacker misrepresented or concealed compliance failures.

*Lane v. Direct Energy Servs., LLC*, No. 19-CV-674-SMY, 2020 WL 3211435, at *3 (S.D. Ill. June 15, 2020) (dismissing fraud claim where plaintiffs merely alleged that defendant had "deceiv[ed] them through material misrepresentations and omissions in the contract").[10]

While Arete acknowledges that its claims for fraudulent inducement and breach of contract are largely coextensive, its argues that Illinois law only prohibits a claim for fraud based upon a failure to perform a contractual obligation, but does not foreclose a fraudulent inducement claim predicated on a "false statement of fact." *See* Resp. 2-3. The cases Arete cites do not support this distinction and are distinguishable. For example, in *Dyson, Inc. v. Syncreon Technology (America), Inc.*, Case No. 17 C 6285, 2019 WL 3037075, at *5 (N.D. Ill. July 11, 2019), the defendant alleged it was entitled to summary judgment because the plaintiff's fraud claims were the subject of a representation contained within parties' contract, thereby precluding an independent claim for fraudulent inducement.[11] The plaintiff (Dyson) argued that its claim was not barred by the contractual overlap because the defendant had made affirmative misrepresentation outside of the parties' contract to induce it to enter the agreement. The Court ultimately agreed, allowing the claim to proceed. Here, there are no claims outside of the parties' contract.

Arete's reliance on *Kingsford Fastener, Inc. v. Koki*, Case No. 00 C 7395, 2002 WL 992610 (N.D. Ill. May 15, 2002), is similarly misplaced, as the alleged misrepresentation in that case was based on an oral "express warranty," not a statement in the parties' contract. *See Kingsford*

---

[10] *See also Lambert v. Dollar Gen. Corp.*, No. 16 C 11319, 2017 WL 2619142, at *6 (N.D. Ill. June 16, 2017) (dismissing fraud claim "based only on the same affirmative statements that backstop [plaintiffs'] breach-of-express-warranty claim"); *Turner*, 82 N.E.3d at 807 ("[A]lleged consumer fraud and the breach of contract cannot 'rest on the same factual foundation'") (citation omitted); *Platinum Inc. v. Infinite Transp., LLC*, No. 3:21-cv-50061, 2021 WL 3033583, at *4 (N.D. Ill. June 19, 2021) ("At bottom . . . *Avery* instructs that the allegations giving rise to [a fraud] claim must be deceptive and distinct from the allegations giving rise to the breach of contract claim.").

[11] *See Dyson, Inc. v. Syncreon Technology (America), Inc.*, Case No. 17 C 6285, Dkt. 65, ¶ 42 (N.D. Ill.); *id.* at Dkt. 152 at 12 (Def.'s Mot. for Summ. J.); *id.* at Dkt. 182 at 6 (Pl.'s Opp'n to Mot. for Summ. J.).

*Fastener, Inc. v. Koki*, Case No. 00 C 7395, 2002 WL 32742894, Dkt. 17 (N.D. Ill. May 15, 2002) (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J.) ("Kingsford's breach of express warranty count is based upon the oral warranty made by Hitachi . . . . This warranty . . . was not contained in any of the written documents between the parties."). In contrast, Arete does not allege any fraudulent representations outside of the parties' contract.

The remaining cases cited by Arete—*Kleczek v. Jorgensen*, 328 Ill. App. 3d 1012 (Ill. App. Ct. 2002) and *BP Amoco Chem. V. Flint Hills Resources, LLC*, 489 F. Supp. 2d 853 (N.D. Ill. 2007)—are also distinguishable in that the SPA specifically considered possible breaches of the seller's representations and developed contractual remedies for any inaccuracies. Illinois law allows parties deference in structuring remedies for the breach of a contractual representation. *See McClure Eng'g Assocs., Inc. v. Reuben H. Donnelley Corp.*, 95 Ill. 2d 68, 72, 447 N.E.2d 400 (1983) ("Public policy strongly favors freedom to contract…permitting competent parties to contractually allocate business risks as they see fit."); *see also United Inv. Group, LLC v. Beggars Pizza Franchise Corp.*, 2017 Il. App. (1st) 162275-U, 2017 WL 5642376, at *3 (Ill. App. 2017) ("[P]arties can limit their right to remedies and damages for breach of contract by the terms expressed in their agreement."). The supposed breach of that contractual representation, without any additional fraudulent statement, does not allow a party to transform a breach of contract claim to one for fraudulent inducement. Arete should be bound by its contracted for remedies.[12]

---

[12] And while the *Kleczak* and *BP Amoco* courts allowed the plaintiffs to pursue fraudulent inducement claims that were coextensive with a breach of contract claims, in both cases, the plaintiffs alleged an affirmative misrepresentation—*i.e.*, a false statement of present or preexisting fact—which both breached and induced the contract. *Kleczek*, 328 Ill. App. 3d at 1020-21 (assuming that contractual representation that seller had not received notice of a dwelling code violation could form the basis of a consumer fraud claim); *BP Amoco Chem.*, 489 F. Supp. 2d at 859 (holding that a false representation of "past or present facts" could form the basis of fraud claim).

## V. The Fraud Claim Is Barred By The Economic Loss Doctrine.

Thacker's economic loss doctrine argument is not waived. First, the economic loss doctrine is part and parcel with Thacker's argument that Arete's fraud claim fails because it only pleads losses arising from the alleged breach of the SPA. *See* Mot. 8. Moreover, an argument is not waived simply because it is listed in a footnote. *Balckmon v. Chicago*, 700 F. Supp. 3d 617, 648 n.27 (N.D. Ill. 2023) ("[W]hile a party may waive an argument by presenting it only in an *undeveloped* footnote, that does not mean all material in footnotes is waived.") (emphasis added).

Arete's assertion that its damages extend beyond those arising from the SPA lack merit. Arete argues that Thacker ignores its other claimed damages: the cost of Center Street, the loss in its value, and reputational harm. Resp. 4. Center Street's $5 million purchase price and/or the diminished value of its purchase are textbook examples of breach of contract damages. *See* Restatement (Second) of Contracts 347 ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain."). Arete's undeveloped claim of "reputational" harm fails to pass Rule 9(b)'s pleading standards and therefore does not alter the analysis. *Elias v. Stewart Title of Illinois*, 2010 WL 4482102, at *6 (a plaintiff must plead fraud damages "with particularity"). Because Arete's alleged damages are all contractual and Arete has not adequately alleged fraud, the economic loss doctrine applies.

## VI. Arete's Alternative Claims For Breach Of Contract And Indemnification Also Fail.

For the reasons discussed above and in Thacker's motion, Arete's alternative breach of contract and indemnification claims fail. In particular, Thacker cannot be held liable for breach of contract or for indemnification because he represented only that Center Street had no additional Liabilities *as of the date* of company's sale. SPA, Art. III (seller's representations and warranties were

14

"true and correct *as of the date hereof*" (emphasis added)). Based on the facts alleged in the Amended Complaint, that representation was accurate.[13]

### *Conclusion*

WHEREFORE, Thacker requests that this Court dismiss Arete's Amended Complaint with prejudice. *See Camasta*, 761 F.3d at 734.

Dated: September 18, 2024

Respectfully submitted,

*/s/ Joel M. Hammerman*
Joel M. Hammerman (ARDC No. 6243071)
**FAEGRE DRINKER BIDDLE & REATH LLP**
320 South Canal Street, Suite 3300
Chicago, IL 60606
(312) 212 6500 / joel.hammerman@faegredrinker.com

---

[13] In its Response, Arete abandons the Amended Complaint's references to other, unspecified SPA warranties. As set forth in Thacker's motion, any claims based on those provisions would be barred by the SPA's limitations period. Mot. 16-17.

15

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2024, I electronically filed the foregoing document with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to the registered CM/ECF participants.

*/s/ Joel M. Hammerman*
Joel M. Hammerman (ARDC No. 6243071)
**FAEGRE DRINKER BIDDLE & REATH LLP**
320 South Canal Street, Suite 3300
Chicago, IL 60606
Tel: (312) 569-1000
Email: joel.hammerman@faegredrinker.com